IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

PC CONSTRUCTION CO., *et al.*,

    Petitioners

v.

CITY OF SALISBURY, *et al.*,

    Respondents

Civil Case No. L-12-0062

oOo
**MEMORANDUM**

I. **Introduction**

This action arises under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq. PC Construction Co. f/k/a Pizzagalli Construction Co. and Travelers Casualty and Surety Co. of America (collectively "Petitioners") seek an order compelling the City of Salisbury, O'Brien & Gere Engineers, Inc., and Construction Dynamics Group, Inc. (collectively "Respondents") to arbitrate all disputes among the parties pursuant to a written agreement containing an arbitration provision. Pet., Docket No. 1. The issues have been fully briefed; a hearing is unnecessary. See Local Rule 105.6 (D. Md. 2010). For the reasons stated herein, the Court hereby declines to enter an order compelling Respondents to submit to arbitration.

II. **Background**

This case stems from various claims filed by Respondents in a Wicomico County, Maryland lawsuit involving a Waste Water Treatment Plant ("Plant") in Salisbury, Maryland that

was principally designed, engineered, and constructed from 2002 through 2008. The Respondents are (i) the City of Salisbury ("the City"), which owns the Plant and entered into separate contracts with each of the parties in the case at bar to facilitate an upgrade and expansion project at the Plant, (ii) O'Brien & Gere Engineers, Inc. ("OBG"), the project engineer, and (iii) Construction Dynamics Group, Inc. ("CDG"), the project construction manager. Alleging that the Plant did not perform as intended due to design defects and post-completion performance issues, the City initially sued OBG in October 2009, adding CDG as a defendant shortly thereafter. On November 30, 2011, the City amended its complaint to include breach of contract and bond claims against Petitioners: (i) PC Construction Co. f/k/a Pizzagalli Construction Co. ("PCC"), the project contractor, and (ii) Travelers Casualty and Surety Co. of America ("Travelers"), which issued a performance bond for the project naming the City as obligee and PCC as bond principal. See Pet. Ex. D, Docket No. 1-4 (Compl., City of Salisbury v. O'Brien & Gere Engineers, Inc. et al., No. 22-C-11-313 (Wicomico Cnty. Cir. Ct.)).[1] The City alleges that PCC and Travelers are responsible for performance problems at the Plant. Both OBG and CDG have filed third-party complaints in the state action naming PCC as a third-party defendant.

While simultaneously defending the suit in state court, PCC and Travelers have petitioned this Court for an order compelling arbitration of the dispute. The Petition is based on a June 2005 construction contract executed by the City and PPC ("the Contract") in connection with the Plant expansion project. The Contract is expressly incorporated into the performance bond issued by Travelers. See Pet. Ex. C (Performance Bond). Although OBG and CDG are not signatories to the Contract, Petitioners argue that they are nevertheless subject to arbitration.

---

[1] Although the City's complaint names other defendants in addition to those mentioned here, the other defendants are not relevant to PCC and Travelers' Motion to Compel Arbitration and are not parties to the suit at bar.

### III. Standard of Review

"[M]otions to compel arbitration exist in the netherworld between a motion to dismiss and a motion for summary judgment." Shaffer v. ACS Gov't Servs., Inc., 321 F. Supp. 2d 682, 683–84 (D. Md. 2004). Whether the motion should be treated as a motion to dismiss or a motion for summary judgment turns on whether the court must consider documents outside the pleadings. See id. (treating motion to compel arbitration as a motion for summary judgment because consideration of documents outside the pleadings was required). Because no documents outside the pleadings are necessary to decide this case, it will be treated as a motion to dismiss.

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must plead plausible, not merely conceivable, facts in support of his claim. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). The complaint must state "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 555. The court must, however, assume the veracity of well-pleaded factual allegations "and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).

### IV. Analysis

Under the FAA, "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. In the Fourth Circuit, a court must enter an arbitration order if the petitioner demonstrates:

> (1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the defendant to arbitrate the dispute.

Adkins v. Labor Ready, Inc., 303 F.3d 496, 500–01 (4th Cir. 2002) (quoting Whiteside v. Teltech Corp., 940 F.2d 99, 102 (4th Cir. 1991)). In determining whether arbitration is required, courts must be mindful that the FAA reflects "a liberal federal policy favoring arbitration agreements." See, e.g., Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983); Hightower v. GMRI, Inc., 272 F.3d 239, 242 (4th Cir. 2001) (acknowledging "the clear federal directive in support of arbitration"). As the Supreme Court explained in Moses, "any doubts concerning the scope of the arbitral issues should be resolved in favor of arbitration . . . ." 460 U.S. at 24–25. Although federal policy favors arbitration, however, "a court must first determine whether the parties actually agreed to arbitrate." Shaffer, 321 F. Supp. 2d at 685 (explaining that state-law principles apply to the issue of contract formation while federal substantive law applies to the issue of arbitrability).

Here, there is no disagreement with respect to the first, third, and fourth elements of the Adkins test. The only issue, therefore, is whether the Contract's dispute resolution provision applies to the dispute that gave rise to the state litigation. The dispute encompasses claims made by two categories of Respondents: the City, which is a signatory to the Contract, and OBG and CDG, which are nonsignatories. The applicability of the arbitration provision to the claims made by each of these two categories of Respondents is analyzed in turn.

    a. **Applicability of Arbitration Provision to the City's Claims**

Section 4.7 of the Contract's General Conditions, titled "Resolution of Claims and Disputes," provides for a phased or "stepped" resolution process for certain disputes, which culminates in final, binding resolution by a Dispute Resolution Board. See Pet. Ex. B, §§ 4.7.6, 4.7.9, 4.7.16. Under § 4.7.1, "all Contractor claims, disputes and other matters in question against the Owner arising out of or relating to the Contract or the breach thereof (hereinafter

collectively referred to as 'Claims'), shall be subject to the terms and conditions of this Dispute Resolution Clause consisting of Sections 4.7.2 through 4.7.18." Taken alone, this provision is clear and unequivocal in providing for binding arbitration procedures only for claims and disputes submitted by the Contractor (PCC) against the Owner (the City). Article 13 of the Contract, however, explicitly (and confusingly) defines "Claims by the Contractor against the Owner" as "demands or assertions by one of the parties seeking adjustment or interpretation of Contract terms, payment of money, extension of time or other relief with respect to the terms of the Contract." Pet. Ex. A. Applying this definition of "Claims by the Contractor" to § 4.7.1, Petitioners argue that the provision is broad and unambiguous in requiring that any and all disputes or controversies arising out of or related to the Contract must be resolved through binding arbitration.[2]

The City argues, on the other hand, that the dispute resolution provisions of the Contract are "only intended to address claims by the Contractor against the Owner." City's Opp. 3, Docket No. 10. The City points out that §§ 4.7.2 through 4.7.18, collectively deemed the Dispute Resolution Clause, outline a specific process that must be followed by the Contractor with respect to claims that it has submitted against the Owner, while providing no information about a parallel process for claims submitted by the Owner against the Contractor.

Under Petitioners' reading of the Dispute Resolution Clause, the words "Contractor" and "Owner" are intended as short-hand terms to designate the party bringing a claim and the party

---

[2] The Court does not read "Contractor claims, disputes and any other matters in question against the Owner" to refer to three distinct types of arbitrable issues, as Petitioners suggest. See § 4.7.1. Under the Last Antecedent Rule, qualifying words or phrases are presumed to refer to the language immediately preceding the qualifier, unless context and common sense suggest otherwise. Bakery & Confectionary Union and Indus. Intern. Pension Fund v. Ralph's Grocery Co., 118 F.3d 1018, 1026 (4th Cir. 1997) ("Grammatical construction of contracts generally requires that a qualifying phrase be construed as referring to its nearest antecedent.") (internal citation and quotation omitted). Here, use of the phrase "other matters" makes clear that the word "contractor" was intended to modify claims, disputes, and other matters brought against the Owner. Therefore, if the definition of "Claims by the Contractor" in Art. 14 applies to § 4.7.1, it must encompass claims, disputes, and other matters.

defending the claim, respectively. Such a reading is unnatural, especially in light of the Contract as a whole. Section 4.7.3, for instance, makes "[t]he issuance of a written decision by the Owner . . . with respect to any such Claim" a "condition precedent to any exercise by the Contractor of such rights or remedies as it may otherwise have under the Contract . . . ." Under § 4.7.17, the "Contractor acknowledges its awareness that the Owner has a self-interest in the Project, and the Contractor expressly waives any conflict of interest presented thereby or resulting there from." Given the inherently asymmetrical nature of construction transactions, in which the self-interested owner is in a better position to make demands and decisions, the Court concludes that the Dispute Resolution Clause does not support a reading of the Contract in which "Contractor" and "Owner" mean anything other than "Contractor" and "Owner."

Moreover, the tenuous relationship between Art. 13 and § 4.7.1 is underscored by the fact that the two sections appear in separate documents, each of which is expressly incorporated by reference into the Contract. Section 4.7.1 appears in a document entitled "General Conditions of the Contract for Construction," which is based on a form construction contract, American Institute of Architects ("AIA") Document A201 – 1997.[3] See Pet. Ex. A at 31–75. Article 13 appears in a document entitled "Construction Contract Between Owner and Contractor," which is based on a different form construction contract published by a different entity, National Construction Law Center ("NCLC"), Inc. Document I – 1994 Edition.[4] See Pet. Ex. A at 1–25. As the City correctly points out, the general definition of "Claims by the Contractor" in Art. 13 is followed by a number of terms and conditions, some of which refer exclusively to claims

---

[3] Although the document appears to be a version of the AIA template that has been tailored to meet the Plant project specifications, it is not clear what changes, if any, were made to the arbitration provisions, or whether an awareness of such changes would be helpful to the Court in determining the parties' intent with respect to arbitration.

[4] It is not entirely clear whether the document is based on NCLC Document I, as the caption suggests, or NCLC Document 10 (Fixed Price Construction Contract Between Owner and Contractor), as a below-the-line notation on the first page of the document suggests. Regardless, it is not clear what changes, if any, were made to the NCLC form contract used to create the document, or what such changes might reveal about the parties' intent.

initiated by the Contractor. Article 13(F) provides, for example, that "[a]ny claim for an extension of time by the Contractor shall strictly comply with the requirements of Subparagraph 13(A) above." Additionally, the term "Claims by the Contractor" does not appear to be used throughout either the Contract as a whole or the "Construction Contract Between Owner and Contractor." It appears, rather, to be a term that is defined in light of and applies primarily to the terms and conditions in Art. 13. The requirement in Art. 13(B) that "[t]he Contractor and the Owner shall continue their performance hereunder regardless of the existence of any claims submitted by the Contractor," for instance, obligates PCC to continue work on the Plant and the City to continue making payments to PCC even if one of the parties has submitted a claim against the other.

Finally, § 4.6.1 of the General Conditions, which appears in the same document as § 4.7.1, defines "Claim" as "a demand or assertion by one of the parties seeking, as a matter of right, or adjustment of Contract terms, payment of money, extension of time or other relief with respect to the terms of the Contract . . . ." Although this section is cited by Petitioners in support of the proposition that the arbitration requirement is broad and all-encompassing, it actually lends more support to the City's reading of the Contract. In other words, because it is preceded by a broader definition of the term "Claim," the narrower reference in § 4.7.1 to "Contractor claims, disputes and other matters in question against the owner" indicates a clear intention to carve out one particular type of "Claim" for binding arbitration.

The Court concludes that the parties intended to require binding arbitration only for claims and disputes initiated by PCC against the City. Although the Contract lacks a certain amount of internal consistency, this is not surprising given that the Contract is cobbled together from a variety of disparate documents obtained from various sources. Drafting problems such as

this do not render a Contract ambiguous if one of the two proffered interpretations is unreasonable. Petitioners have not proven that they are entitled to an order compelling the City to submit to arbitration.

### b. Applicability of Arbitration Provision to OBG and CDG's Claims

In general, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." United Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582 (1960). The Fourth Circuit has concluded, however, that in certain cases nonsignatories may be bound to an arbitration provision within a contract executed by other parties. See Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH, 206 F.3d 411, 416 (4th Cir. 2000). One way in which this may occur is through the doctrine of equitable estoppel. In the arbitration context, this doctrine "recognizes that a party may be estopped from asserting that the lack of his signature on a written contract precludes enforcement of the contract's arbitration clause when he has consistently maintained that the other provisions of the same contract should be enforced to benefit him." Id. at 418. In other words, "[a] nonsignatory is estopped from refusing to comply with an arbitration clause when it receives a 'direct benefit' from a contract containing an arbitration clause." Id. (internal quotations and citations omitted) (concluding that a nonsignatory was estopped from refusing to arbitrate because its "entire case hinge[d] on its asserted rights" under the contract containing the arbitration provision).

As stated, above, however, the arbitration provision in the Contract between PCC and the City is narrow in the sense that it only subjects claims brought by PCC to a binding dispute resolution process. The Court need not determine whether OBG and CDG's claims against PCC are based on the Contract or seek a direct benefit from it, because the claims were not initiated

by PCC. Because the Dispute Resolution Clause does not apply to disputes initiated by OBG and CDG, the Court will not require those parties to submit to arbitration in lieu of pursuing a judicial remedy in state court.

V.  **Conclusion**

For the reasons set forth above, the Court concludes that Respondents are not subject to binding arbitration under the Contract. Accordingly, the Court will, by separate Order of even date, DENY the Petition to Compel Arbitration.

Dated this 29th day of June, 2012.

                                                                                  /s/ Benson Everett Legg
                                                                                  Benson Everett Legg
                                                                                  United States District Judge